THE COMMISSIONERS OF INLET SWAMP DRAINAGE DISTRICT, Appellee, *vs.* WILLIAM GLEIM *et al.* Appellants.

*Opinion filed April 20, 1916.*

1. DRAINAGE—*commissioners must prove charge that defendants have connected lands with ditches of district.* Drainage commissioners have the burden of proving their charge that the defendants have, by means of tile drains and artificial ditches, connected their lands with the ditches of the district.

2. SAME—*what does not justify finding that owners have connected lands with ditches of the district.* The fact that the owners of lands lying outside a levee district have constructed tile ditches, which, with natural water-courses, carry off the surface waters from their lands so that they ultimately reach the ditches of the district through a ditch constructed long before the drainage district was organized, does not justify a finding that the owners have connected their lands with the ditches of the district within the meaning of the statute.

3. SAME—*when one owner cannot subject lands of others to inclusion in drainage district.* The fact that the owner of land deems it necessary to construct a ditch connecting with the ditches of a drainage district in order to carry off water which has rightfully been discharged upon his land by the owners of other lands according to natural drainage, does not subject the lands of the other owners to inclusion in the district as having been connected with the ditches of the district by the voluntary act of such owners.

APPEAL from the County Court of Lee county; the Hon. JOHN B. CRABTREE, Judge, presiding.

JOHNSON & JOHNSON, (JOHN E. ERWIN, of counsel,) for appellants.

HENRY S. DIXON, GEORGE C. DIXON, and GROVER W. GEHANT, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The commissioners of Inlet Swamp Drainage District on February 10, 1915, filed in the county court of Lee county their complaint in writing, setting forth that appellants, William Gleim and Adam Gleim, the owners of certain lands in Bradford township, Lee county, lying outside said district, had since the organization of the district made connection with the ditches and drains of the district, and praying that the said lands described in the complaint be annexed to and be made a part of said district and assessed as other lands therein. Appellants appeared and answered the complaint, denying that they had connected their lands, or any part thereof, with any drain or ditch of the district. A hearing was had before the court, which resulted in the entry of a judgment finding the facts as alleged in the complaint and annexing the lands of appellants to the drainage district. From that judgment William Gleim and Adam Gleim have prosecuted this appeal.

The sole ground urged for reversal is, that the evidence does not sustain the finding, upon which the judgment is based, that appellants have since the organization of the district connected their lands with the ditches and drains of the district.

The Inlet Swamp Drainage District was organized under the Levee act in 1887. Among the ditches of the district is one known as the Frost lateral, which extends north and south along the center line of section 27, in Bradford township. The land belonging to appellant William Gleim which the commissioners by this proceeding seek to annex to the district is the west half of the southeast quarter of

section 28, in Bradford township. The east line of this tract is three-fourths of a mile west of the Frost lateral. The land belonging to the appellant Adam Gleim which the commissioners seek to annex to the district consists of the east half of the southwest quarter of said section 28, which adjoins the land of William Gleim on the west, and the southeast quarter of the northwest quarter of the said section 28. The east line of this land is one mile west of the Frost lateral. William Gleim also owns the east half of the southeast quarter of section 28, which lies within the drainage district. The southwest quarter of section 27, which lies between the east half of the southeast quarter of section 28 and the Frost lateral, is owned by Andrew and Reinhart Aschenbrenner. The northwest quarter of the Aschenbrenner land (which is referred to in this record as the Frost forty) is not within the drainage district. The remainder of the Aschenbrenner land is within the district. The following plat will serve to show the relative positions of the Gleim and Aschenbrenner lands and the Frost lateral:

The commissioners upon the hearing relied entirely upon the charge that Adam and William Gleim had since the

organization of the district connected their lands, by means of tile drains and artificial ditches, with the Frost lateral, and it devolved upon them to establish that charge by a preponderance of the evidence in order to warrant the court in entering a judgment annexing these lands to the district. We have read the evidence with care, and are of the opinion that it fails to establish the charge that appellants have, by means of tile drains and artificial ditches, connected their lands with the Frost lateral. The testimony shows that the lands of Adam Gleim, and the west half of the southeast quarter of section 28, belonging to William Gleim, are drained by tile ditches constructed in natural water-courses, which cross these lands in an easterly and southeasterly direction. There are two of these natural water-courses, one draining the north half of these lands and the other the south half. The north water-course begins in the southeast quarter of the northwest quarter of section 28, belonging to Adam Gleim, where it has an elevation of 39 feet above the surface of the ground at the Frost lateral. It extends in a southeasterly direction, crossing the northeast quarter of the southwest quarter of section 28, belonging to Adam Gleim, and the northwest quarter of the southeast quarter of section 28, belonging to William Gleim, and across the northeast quarter of the southeast quarter of section 28, being a portion of the land belonging to William Gleim which lies within the drainage district. At the point where it crosses the line between the east and west halves of the southeast quarter of section 28, owned by William Gleim, the elevation of the water-course is 14.12 feet above the surface of the ground at the Frost lateral. The tile ditch constructed in this water-course terminates about ten rods east of this point in a small channel, about two feet deep and two or three feet wide, which extends east in the water-course from the outlet of the tile and crosses the line between William Gleim's east eighty and the Frost forty at a point where the elevation of the surface of the

ground is about 8.23 feet and the elevation at the bottom of the channel 6.83 feet above the surface of the ground at the Frost lateral. The contention of the commissioners is that this channel is artificial, and that it continues east across the Frost forty, and other lands belonging to Andrew and Reinhart Aschenbrenner, to the Frost lateral. The evidence, however, fails to show that the channel leading east from the end of the north tile, even if artificial, has been constructed since the organization of the district or that an artificial ditch extends from the outlet of the tile to the Frost lateral, but, on the contrary, shows that this tile ditch was constructed and the water therefrom followed its present course to the ditch now known as the Frost lateral long before the drainage district was organized.

There is some evidence that the various owners of the southwest quarter of section 27 have at times cleaned out and deepened portions of the water-course through which the waters from the north half of the lands belonging to appellants flow to the Frost lateral, but the evidence shows that this has been done solely for the benefit of the Aschenbrenner lands and without any co-operation on the part of appellants. One land owner cannot, by connecting with the district drains a ditch from his land which carries water coming from the lands of others who have done no act to connect their drains with the district, subject the lands of such other owners to be included in the district. *Dayton* v. *Drainage Comrs.* 128 Ill. 271; *Gar Creek Drainage District* v. *Wagner,* 256 id. 338.

The south water-course crossing these lands starts at the western line of the southeast quarter of the southwest quarter of section 28, belonging to Adam Gleim, with an elevation of 27.7 feet above the surface of the ground at the Frost lateral. It extends in an easterly direction across that tract, and thence across the southwest quarter of the southeast quarter and the southeast quarter of the southeast quarter of section 28, belonging to William Gleim. It

has a fall of 6 feet in crossing the land of Adam Gleim and a fall of about 12 feet in crossing the lands of William Gleim, the elevation of this water-course at the east line of the land of William Gleim, where the tile ditch ends, being 9½ feet above the surface of the ground at the Frost lateral. The proof shows that the water from this tile ditch empties upon the surface of the ground, and then, following the natural slope of the ground in a slight depression, flows in an easterly direction across the Aschenbrenner land to the Frost lateral. The proof also shows that this tile ditch was constructed before the drainage district was organized, and there is a total lack of evidence to show that any artificial ditch extends from the outlet of this tile ditch to the Frost lateral.

The elevations of the lands of appellants above the surface of the ground at the Frost lateral, as above given, are taken from surveys made by two civil engineers, both of whom testified on behalf of the appellants, and neither their testimony nor the correctness of their survey is contradicted by any reliable evidence offered by appellee. It appears from these surveys and from the testimony of the engineers that the natural water-courses above mentioned extend through the lowest portions of the appellants' lands. Those lands are rolling, as is apparent from the following elevations taken from the plat of one of the surveyors, the ground on the bank of the Frost lateral being taken as the datum: The highest elevation on the southeast quarter of the northwest quarter of section 28, belonging to Adam Gleim, is 48.97 feet and the lowest elevation is 35.14 feet; the highest elevation on the east half of the southwest quarter of section 28, belonging to Adam Gleim, is 51.62 feet and the lowest elevation is 19.91 feet, the latter elevation being at the point where the south water-course crosses the line between that land and the land of William Gleim on the east; the highest elevation on the west half of the southeast quarter of section 28, belonging to William Gleim,

is 44.69 feet and the lowest elevation is 13.79 feet, the latter elevation being at the point where the south water-course crosses the line between that land and the east half of the same quarter section; the highest elevation on the east half of the southeast quarter of section 28, belonging to William Gleim, is 29.20 feet and the lowest elevation is 6.83 feet, the latter elevation being at the bottom of the channel in the north water-course at the point where it crosses the line between this tract and the Frost forty on the east. These elevations clearly show that the lands of appellants are not in any way dependent upon any ditch or drain of the district for drainage and that in a state of nature the water therefrom must necessarily flow down and upon the Aschenbrenner lands, and, as hereinbefore pointed out, if the owners of the Aschenbrenner lands find it necessary to cut ditches connecting with the ditches and drains of the district in order to relieve their lands of the water thus cast upon them, such connection by the owners of the Aschenbrenner lands will not justify a finding that appellants have, within the meaning of the statute, connected their lands with the ditches and drains of the district. The following language used in *People* v. *Barber,* 265 Ill. 316, is appropriate here: "The evidence shows that the lands included in the drainage district as originally formed, so far as drainage is concerned, are, and always have been, servient to the lands of the relators, and that the relators have done nothing further than to collect the surface waters upon their respective tracts of land and by means of tile drains and open ditches conduct them, in the natural course of drainage, into natural water-courses which either directly or indirectly have as their outlet the ditches of the district. Such acts on the part of land owners outside a drainage district do not constitute connecting with the ditches of the district within the meaning of the statute. In order to establish that a tract of land lying outside a drainage district has been connected by the owner with the ditches of the district it is

not sufficient to merely show that the waters from that tract ultimately pass into and through the district ditches, but it must further appear that an artificial ditch has been con- structed leading from that land directly into the district ditch or into some ditch which has been theretofore arti- ficially connected with the drainage ditch." The evidence here fails to show any such connection between the lands of appellants which are sought to be annexed to the district and any drain or ditch of the district.

The judgment of the county court is reversed and the cause is remanded to that court, with directions to dismiss the complaint as to appellants' lands.

*Reversed and remanded, with directions.*