*Cause transferred.*

---

(No. 13002.—Reversed and remanded.)

THE PEOPLE *ex rel.* Charles Speck, Highway Commissioner, Appellee, *vs.* S. D. PEELER *et al.* Appellants.

*Opinion filed December 17, 1919.*

DRAINAGE—*the liability of a district ceases after bridges have been restored.* Where a drainage district, after deepening certain water-courses at highway intersections, restores the highways and the bridges to their former condition of usefulness the liability of the district ceases, and it cannot be compelled to thereafter build new bridges to take the place of the old ones after they have become unsafe by reason of travel or decay, as such duty rests upon the road district. (*People* v. *Block,* 276 Ill. 286, and *Brougher* v. *Drainage District,* 277 id. 156, explained.)

APPEAL from the Circuit Court of Massac county; the Hon. D. T. HARTWELL, Judge, presiding.

H. A. EVANS, for appellants.

WALTER ROBERTS, State's Attorney, and FRED R. YOUNG, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Charles Speck, highway commissioner of road district No. 3 in Massac county, filed a petition for *mandamus* to the January term, 1919, of the circuit court of Massac

county, in the name of the People, against S. D. Peeler, S. Bartlett Kerr and Fred E. Riepe, drainage commissioners of Cache River Drainage District, to compel them to build a bridge across the ditches of said drainage district at each of five places where the ditches cross public roads in the road district and to forever maintain and keep the same in repair. After a demurrer had been overruled to the petition the drainage commissioners answered the petition as amended. A demurrer to the answer was then sustained, and the court entered judgment thereon granting the writ, ordering the drainage commissioners to build five good and lawful bridges,—one each at the public crossings aforesaid,—and to restore such road crossings to their full and proper usefulness. The drainage commissioners have appealed.

The material facts admitted by the demurrer are the following: Road district No. 3 comprises township 14 and fractional township 14, range 5, east of the third principal meridian, in Massac county, of which district the relator is road commissioner. On May 8, 1911, the Cache River Drainage District, comprising parts of Union, Johnson, Massac and Pope counties, was duly organized, after a legal hearing on a sufficient petition, by the judgment and order of the county court of Massac county, under and by virtue of the Levee act. On August 5, 1912, sub-district No. 1 in the Cache River Drainage District was duly and legally organized by the order and judgment of the same county court under section 59 of said act, and it comprises a part of said road district. The appellants are drainage commissioners of the district and sub-district. In the sub-district the drainage commissioners had constructed three ditches, known as the Seilbeck ditch, the New Columbia ditch and the Gurley ditch, all of which are located in said road district. The Seilbeck ditch follows a natural water-course and crosses three public roads in the road district, at each of which crossings the road district had previously con-

structed a small bridge across the water-course for public travel. The Gurley and the New Columbia ditches also crossed, in a natural water-course, a public road in the road district, and at each of those crossings the road district had previously built a small bridge across the water-course for the convenience of public travel. All five of the bridges were wooden bridges built of two-inch flitch laid over small, round, wooden girders, and when reached by the ditching machine of the drainage commissioners were picked up and laid aside until the ditching machine had completed the ditching at the crossings. The drainage district then arranged with John Verbarg, then road commissioner for the road district, to replace and re-build all the bridges over the crossings and restore the highway and bridges to their former degree of usefulness, by filling the road-bed with dirt and replacing the bridges, using new material when proper and necessary. The drainage district paid Verbarg out of its funds his full charges and outlays for thus restoring the highway and bridges. The bridges thus restored have been for more than five years in constant use for travel by the general traveling public and have only become worn, dilapidated and insufficient by reason of such use, and are simply in need of being repaired or replaced with more modern and permanent bridges. All the ditches were constructed in accordance with plans and specifications approved by the county court and with just the proper and sufficient capacity to receive and carry away the natural waters falling in and on the lands in the drainage district, and no waters not naturally flowing to and through said crossings and falling in the natural watersheds to said water courses pass through said ditches or water-courses. The ditches are not larger than sufficient to insure proper and complete drainage of the lands in the drainage district.

Appellants insist that under the facts admitted by the demurrer the drainage district owed to the road district, when the highways were cut and the bridges removed,

the duty to simply reconstruct and re-build the roads and bridges so as to restore them to their former degree of usefulness and efficiency and that it has fully discharged that duty. Appellee contends that the duty of the drainage district is continuous, and that as each bridge or structure becomes dilapidated or destroyed, by use of the traveling public or otherwise, it must forever repair or re-build the same at its cost. The issues are clear cut. Appellee makes no contention that the drainage district did not restore the road and the bridges, in the first instance, to their former degree of usefulness and efficiency and in a proper manner.

Every land owner in the drainage district had a natural right to drain his land for sanitary and agricultural purposes into the natural water-courses of the drainage district before it or the road district was organized. Those natural rights are now treated as easements by all leading writers upon the subject of easements. (Jones on Easements, secs. 725-767.) Natural drainage is necessary to render land fit for the habitation and use of man. The streams are the great natural sewers through which the surface waters escape to the sea, and the natural depressions in the land are the drains leading to the streams. So long as they are used without exceeding their natural capacity, the owner of land through which they run cannot complain that the water is made to flow in them faster than it does in a state of nature. The right to drain upon and over lower lands without making compensation for such privilege is the same whether the higher land is the farm of an individual owner or a public highway, and along with this right the upper land owner has the further right to cut necessary and proper ditches in his own land to facilitate its drainage when confined to removing surface waters naturally falling upon his land. (2 Farnham on Waters and Water Rights, sec. 186.) Appellee's road district constructed its roads subject to said natural rights, and was legally bound to protect such rights

in the construction of its roads so far as it reasonably could do, consistently with its statutory rights and duties in such construction.

By statute drainage districts are given extensive powers and privileges in the matter of securing more thorough and timely drainage. They may cut large and extensive ditches for that purpose when necessary and proper to secure complete and prompt drainage; may dig artificial ditches and drains or extend them through natural depressions, channels and water-courses; may deepen and widen the same and cross railroads or public highway embankments and cuts with them, and may assess the railroads or townships for benefits and damages accruing by reason of such drainage. By the provisions of section 55 of the Levee act such assessments against a railroad or township shall not include the expenses of constructing or repairing any bridge, embankment or grade, culvert or other work on the roads of such corporations crossing any ditch or drain constructed on the line of any natural depression, channel or water-course, but the corporate authorities of such township or railroad are required at their own expense to construct such bridge, culvert or other work or to replace any bridge or culvert temporarily removed by the drainage commissioners in doing their work. Such provisions are valid and binding on railroad companies. (*Chicago, Burlington and Quincy Railway Co.* v. *People,* 212 Ill. 103.) They would be equally binding upon townships or road districts but for the provisions of sections 9 and 10 of article 9 of our constitution. Those sections prohibit the legislature from compelling a town to incur a debt without its consent and from granting the right of corporate taxation to any other than the corporate authorities, who are the municipal officers directly elected by the people to be taxed or appointed in some mode to which the people to be taxed have given their assent. This court has held that the destruction of a public highway, requiring its repair, by building a bridge or replacing

or repairing one removed by drainage commissioners and otherwise repairing the road, necessarily imposes a burden and a debt on the township if it be required to make such repairs or build the bridge, and that this is so although the crossing is in a natural depression, channel or water-course. (*People* v. *Block,* 276 Ill. 286; *Brougher* v. *Lost Creek Drainage District,* 277 id. 156.) The holding in those cases is that where the crossing is in a natural water-course the drainage district must restore the road and bridge at such crossing at its own cost, and may include the expense in its assessment roll in like manner as other claims for damage to property may be. There is no intimation in those decisions that a road district is to be entirely relieved from its statutory duty of repairing and re-building bridges at such crossings when such repair or re-building is required by reason of the bridges becoming out of repair or dilapidated by reason of public travel, or that a drainage district should forever repair and maintain bridges on such crossings over natural water-courses after it has restored the roads and bridges cut and removed by it.

The road commissioners of this road district, as already disclosed, built the five bridges in question before the drainage district was organized. There is no contention that such building of the bridges was not in accordance with their statutory duty to the traveling public, and we must assume that it was necessary for them to build the bridges under their duties as such road commissioners. When the bridges were removed by the drainage district and afterward re-built and the highway completely restored at those crossings, the bridges and the part of the highway restored constituted parts of the highway, of which the highway commissioners had full control. The bridges were no part of the improvements of the drainage district. The duty of the road district to repair and re-build those bridges after they were restored, as aforesaid, still rests upon the road commissioners for the road district. They possess the

only authority conferred by law for levying a tax or incurring a liability for public road and bridge purposes. (*People* v. *Block, supra.*)  No further liability can attach to the drainage district on account of such bridges to repair or rebuild the same, when such repairing or re-building is only required by reason of public travel thereon or of natural decay.  The drainage district is itself a municipal corporation, and there is no authority under the law to compel it to assume any duties or liabilities of the road district with regard to building bridges on public highways over natural watercourses, as required by the statute on roads and bridges.  While a road district may not be required to build bridges over artificial channels cut through its roadway by a drainage district, there can be no question that its duty to build bridges on the highways across water-courses is continuous, even though such water-courses are used by the drainage district as part of its ditches.

Appellee's petition alleged that the drainage district widened and deepened the water-courses so as to require somewhat longer bridges than those removed by the drainage district.  Appellants' answer denied that longer bridges were required by reason of such widening and deepening of the water-courses.  The answer stated a complete defense to appellee's petition in this regard under its allegation that the drainage district did not make the channels at such crossings deeper or wider than was necessary to properly drain the lands within the drainage district.  It was the right of the drainage district to have the natural water channel at such crossings of sufficient capacity to give the drainage district proper drainage.  It is the duty of a railroad company or of the officers of a road district to construct bridges across natural water-courses of sufficient length and height above the bed of the stream to subserve the demands of the public with respect to their rights of drainage, not only as they exist at the time of crossing such water-courses but for all future time.  (*Chicago, Burlington and Quincy*

*Railway Co.* v. *People, supra.*) When a natural water-course is just deepened and widened by a drainage district sufficiently for necessary and proper drainage, it will not require longer bridges, as a rule, than were necessary or proper to be built by the road district prior to such widening and deepening. This is particularly true where the drainage district secures a proper outlet and increases the natural fall of the water-course. A natural water channel properly widened and deepened so as to give more rapid and complete drainage necessarily carries away the water more rapidly than it would do in a state of nature and is less subject to the dangers of overflow by flood waters that often destroy bridges and other such structures constructed over it. There is no reasonable theory upon which to base the contention that by appellants' ditches appellee's burden has been increased with respect to his duty to build proper and necessary bridges for public travel over said crossings. If their answer is true appellants discharged their full and legal obligations to appellee when they restored the roads and bridges to their former state of usefulness and efficiency, under the decisions in *People* v. *Block, supra,* and *Brougher* v. *Lost Creek Drainage District, supra.* The debt sought to be imposed upon the road districts interested in those cases was for the destruction of highways and bridges by the acts of the drainage districts in digging the ditches, and this court simply held that the legislature had no right or power, under the constitution, to impose such a debt, and required the drainage districts at their cost to repair the highways and bridges and thus restore them to their former degree of efficiency.

The court erred in sustaining the demurrer to the answer and in rendering judgment against appellants. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*