(No. 16383.—Reversed and remanded.)
THE MINNIE CREEK DRAINAGE DISTRICT, Appellee, *vs.*
W. O. NATION *et al.* Appellants.

*Opinion filed February 17, 1925.*

1. DRAINAGE—*right of owner of dominant estate to collect and discharge surface water.* The owner of the dominant estate may rightfully collect the surface waters on his land and by means of ditches conduct them into natural water-courses which empty into the ditches of a drainage district without subjecting his land to be annexed to the district.

2. SAME—*natural water-course may be deepened and widened.* A natural water-course may be improved by deepening and widening it for the purpose of effectively conveying the surface water off the land, and such action does not create a new water-course.

3. SAME—*what constitutes a water-course.* A slough, swale or depression extending from one tract of land to a lower tract and carrying surface water, even in rainy seasons, only, is a water-course within the meaning of the drainage laws, though the water has not worn a channel having well-defined banks.

4. SAME—*what must be shown to prove connection with ditches of the district.* To establish that a tract of land lying outside a drainage district has been connected by the owner with the district ditches it is not sufficient to prove that the waters from the land ultimately flow through the district ditches, but it must be proved that an artificial ditch has been constructed leading into a district ditch, or some artificial ditch previously constructed leading into a district ditch.

5. SAME—*when both connection and benefits must be proved.* Where the work done which is relied upon as amounting to connection with the ditches of a drainage district was done between the amendment of the Levee act in 1919 and the amendment thereof in 1923, it is necessary, in order to authorize annexation of the lands to the district, to prove not only the connection but also that the lands so connected will be benefited by the work of the district.

6. STATUTES—*a statute will not ordinarily be given retroactive effect.* A statute will not be given retroactive effect unless the intention of the legislature that it shall have such effect clearly appears from the act.

APPEAL from the County Court of Kankakee county; the Hon. HENRY F. RUEL, Judge, presiding.

A. F. Goodyear, E. A. Marcotte, and John H. Beckers, for appellants.

W. R. Hunter, and Eva L. Miner, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

Minnie Creek Drainage District of Kankakee county, through its commissioners, on May 5, 1924, filed in the county court of Kankakee county its written complaint under section 58 of the Levee act, setting forth that certain owners of property located outside the district, including appellants, Frank W. Elliott, W. O. Nation and John Schrader, had since the organization of the district made connection with the ditches and drains of the district, and praying that the lands described therein be annexed thereto and assessed as other lands in the district. Appellants and other property owners appeared and filed answers to the complaint, denying that they had connected their respective lands with any drain or ditch of the district, denying that their lands, or any part thereof, are or will be benefited by the work done or to be done by the district, and further questioning the constitutionality of section 58 of the Levee act. A hearing was had before the court, who, after making a personal examination of the lands sought to be annexed, entered an order finding the facts substantially as alleged in the complaint and annexing the lands to the district. From that order and judgment appellants heretofore named have prosecuted this appeal.

Minnie Creek Drainage District was organized under the Levee act about 1893, and its south boundary line in the vicinity of the lands here in question was the center of the east and west highway between sections 26 and 35 in township 30. The Minnie Creek Drainage District main ditch extended east and west through the center of section 26. One of the ditches of the district, and with which

connection is here alleged to have been made, is known
as lateral "C." It extends from the main ditch, near the
northeast corner of the southeast quarter of section 26, in
a southwesterly direction to a point a few rods east of the
southwest corner of that quarter section, where it crosses
the highway on the south boundary of the district and ex-
tends southerly for about forty rods into the north half of
the northeast quarter of section 35, owned by Kitty Elliott,
wife of one of the appellants, and it was stipulated that
this particular 80 acres had always been assessed by the dis-
trict for benefits and such assessments had been paid by the
owners thereof. Seemingly no work has been done on lat-
eral "C" since its construction. All of the lands involved
in this appeal are in section 35 in Otto township. Frank
W. Elliott owns 80 acres, the south half of the north-
east quarter; W. O. Nation owns 240 acres, the southeast
quarter and the east half of the southwest quarter; John
Schrader owns 160 acres, the northwest quarter. The latter
quarter section lies immediately south of the east and west
highway, which, as stated, is the south boundary line of the
district. The evidence shows that for many years prior to
the organization of the drainage district a ditch extended
along the south side of this highway and a culvert crossed
the road several hundred feet west of where lateral "C"
now crosses it. The fall of the land is such that prior to
the digging of any ditches by the drainage district the water
on the easterly portion flowed east and north into the road
ditch and thence under the culvert into the flat lands north
of the road. The water on the westerly portion flowed
northwesterly through a ditch which began near the south
line of the quarter section and emptied into the roadway
ditch near the northwest corner of the land. The drainage
of the water from this quarter section was in a northerly
direction across the lower lands, and at the present time,
during high water stages, the water runs north over the
highway. The main ditch of Minnie Creek Drainage Dis-

trict, which is a half mile north of Schrader's north line, was constructed about one-half mile south of the natural water-course of Minnie creek. Thereafter the outlet to Schrader's ditch near his northwest corner became practically useless, as the work done by Minnie Creek Drainage District caused the water to back up from the north toward his land. Schrader's brother owned the 160 acres at that time, and, in order to drain his land, after the district work was done he laid a line of twelve-inch tile, beginning at the old road ditch near the northeast corner of the land and extending westerly and southerly for about 1400 feet. At present, under ordinary conditions, the water from this tile flows into the same old road ditch and thence east therein to lateral "C," but in high water stages it goes over the road north. No work of any consequence has been done on the road ditch by Schrader except the removal of a few shovels full of sand at the mouth of his twelve-inch tile, and some cleaning out of the ditch was done by the road overseer. Nothing has been done by Schrader to change the ultimate disposition of the water coming from his quarter section of land and flowing into the old ditch on the south side of the highway.

Elliott bought the south half of the northeast quarter of section 35 about 1919. This land lies immediately south of the property into which lateral "C" extends, and the north line of this 80 acres is about forty rods from where lateral "C" ended as constructed by the district. The land has always been low and marshy, and still is since the construction of lateral "C." The west three-fourths of the 80 is comparatively level from east to west and has a fall from north to south of about four and one-half feet. The major portion of the surface water enters this land from the south, a few rods east of the southwest corner. Water also flows upon the land about 100 rods farther east, and most of it comes from a pond located on the land of Nation. During October, 1920, Elliott and Nation deepened the north

and south channel some twelve or fourteen inches on the westerly side of this 80 acres and extending from two rods north of the south line to within three rods of the north line, the purpose being to confine the water coming upon Elliott's land as much as possible. This channel was made along a swale or depression referred to as a water-course.

Nation owns the west half of the southwest quarter and the southeast quarter of section 35, the latter of which lies immediately south of Frank Elliott's 80 acres. An open ditch or water-course extends from the south line of the southeast quarter in a northerly direction and thence north-westerly through the west half of the quarter section to the north line thereof, where it reaches the Frank Elliott lands and water channel. The fall of the land from the south end of the ditch to the north end is about twelve feet. During August, 1922, this ditch was scraped out and cleaned and the north forty rods of it was straightened. The general course of the water was not changed but continued under the fence on the north line the same as before. This new ditch, however, was not connected by a distance of two rods with the water channel on Elliott's land. Another ditch enters the land of Nation on the easterly side of the northeast quarter of the southeast quarter and ends in a pond located near the north boundary of the quarter section. This ditch carries water from lands located across the hard road in section 35. The water from this pond overflows at times and goes upon the land immediately north thereof belonging to Elliott. A shallow ditch extends a short distance northwesterly and thence north from this pond. Some work was also done upon these two ditches. The complaint filed charges this ditch or water-course to have been connected with lateral "C," but the court made no such finding and the proof did not warrant such finding.

The evidence produced on the hearing tends to show that at the time of filing the complaint a continuous ditch existed from the south end of lateral "C" across the south

forty rods of the land of Kitty Elliott to her south fence, where the ditch extends west alongside the fence for some three or four rods, thence south across the westerly side of the 80 acres belonging to Frank Elliott, and thence south and southeasterly across the 160 acres of Nation. Elliott and Nation denied that either of them, or anyone for them, had made any actual connection with lateral "C." No work was done by them, or by anyone else to their knowledge, upon the Kitty Elliott lands from the south end of lateral "C" to the north line of Frank Ellliott's lands.

It was also shown by appellants that a water-course some ten or twelve inches deep had existed from lateral "C" south to the Frank Elliott lands ever since the latter had owned his property, and also that one or more depressions extended northerly across the south half of the Kitty Elliott lands toward lateral "C," in which some water flowed at times. It further appears that at times the water does not go into lateral "C" but flows west thereof across the northwest corner of the Kitty Elliott lands and north toward the highway between sections 26 and 35. Evidence also was introduced showing that at times water flowed out of the south end of lateral "C" into another ditch extending easterly upon the Kitty Elliott lands, and that the natural water-course is not where lateral "C' is now located but is west thereof, and that at times at least some water goes that way. From the testimony it appears that the fall across the westerly portion of the Frank Elliott lands from south to north is about four and one-half feet, the fall across the Nation lands from south to north is about twelve feet, making a total fall from south to north across the 200 acres of sixteen feet or more. The water from the lands of all of the appellants has always flowed northerly toward or upon the lands lying north of the south boundary line of the district, which lands are necessarily servient to the lands of appellants.

The proof, as we understand it, shows there were low places on the Elliott and Nation lands extending from south

315—22

to north, called swales, through which the surface water
flowed, and it was along the course of these low places or
swales that the ditches were constructed, which consisted of
cleaning out and slightly deepening them along the course
of the natural flow. The entire territory was wet land, and
in times of heavy rains the water was not confined to the
swales but flowed over pretty much all of the land. Except
in times of overflow the water followed the water-course
or swale. It was held in *Lambert* v. *Alcorn,* 144 Ill. 313,
that where water flowed from a higher tract of land upon
a lower one in a fixed and determinate course, so as to dis-
charge at a fixed point, it constitutes a water-course; that
there must be a "ravine, swale or depression" extending
from one tract to the other, and it is not important that
the water has not worn a channel having definite and well-
marked banks or sides. It was further held in that case
that a natural water-course may be improved by deepening
or widening it, for the purpose of more effectively convey-
ing the surface water off the land, without creating a new
water-course. We held in *St. Louis Merchants' Bridge Ter-
minal Railway Ass'n* v. *Schultz,* 226 Ill. 409, that a slough.
or depression which carries water in rainy seasons, only, is
a water-course within the meaning of our drainage laws.
The owner of the dominant estate may rightfully collect
the surface waters upon his land and by means of ditches
conduct them into natural water-courses which empty into
the ditches of the district, without subjecting his land to
be annexed to the district. (*People* v. *Barber,* 265 Ill. 316;
*Inlet Swamp Drainage District* v. *Mehlhausen,* 291 id. 459.)
In order to establish that a tract of land lying outside a
drainage district has been connected by the owner with the
district ditch, it is not sufficient to show the waters from
the land ultimately flow through district ditches, but it must
be shown that an artificial ditch has been constructed lead-
ing into the district ditch, or into some artificial ditch previ-
ously constructed connecting with the district ditch. *People*

v. *Barber, supra; Inlet Swamp Drainage District* v. *Gleim,* 272 Ill. 551; *People* v. *Drainage Comrs.* 282 id. 514.

What Elliott and Nation did was to improve the natural water-course on their own lands by deepening it so as to collect the surface waters and carry them off their lands in the same course they had previously followed. Schrader's land was higher than the land north of it. Along his north line was the public highway, which had been graded higher than the natural surface. On the south side of the road next to his land a ditch had been constructed before the drainage district was organized. Schrader's string of tile extending south and west on his land had its outlet in this ditch a few rods west of where lateral "C" crossed the public highway through a culvert, and it is that tile ditch which it is claimed was the connection he made with the district ditch. According to the preponderance of the testimony the surface water in times of rains flows off Schrader's land north in the road ditch and when the rainfall is heavy it flows over the road. The decided preponderance of the evidence is that none of appellants' lands are benefited by the district ditch. Prior to 1919, when it was sought to annex lands because the owners had connected an artificial ditch with the ditches of the district, it was necessary to show the connection or that the lands are or will be benefited by the work of the district. Under the statute then in force it was held that where land owners had by artificial ditches connected their lands with the district ditches it was to be deemed a voluntary application for annexation and the question of benefits was immaterial. (*Gar Creek Drainage District* v. *Wagner,* 256 Ill. 338.) Under the statute as amended in 1919 it was provided that lands lying outside the district, the owner of which "shall thereafter make connection with the main ditch or drain, or with any ditch or drain within the district as organized, and whose lands are or will be benefited by the work of such

district, shall be deemed to have made voluntary application to be included in such drainage district." (Laws of 1919, p. 442.) The material change by the amendment of 1919 was the substitution of "and" for "or," so that under the 1919 amendment, to authorize the annexation of land outside the district because the owner had connected it with the district ditch it must be benefited by the work of the district. In 1923 the same section of the statute was again amended by substituting "or" for "and," so that as amended in 1923 the statute was restored as it existed before 1919. If we are to attribute any meaning to the change made in 1919, it could only be that it was intended the proof of connection of land lying outside the district with the district ditches was not, alone, sufficient to authorize annexation, but it must appear also that the lands will be benefited by the work of the district. The amendment of 1919 was made after the decision in *Gar Creek Drainage District* v. *Wagner, supra.* The amendment of 1923 seems to conclusively show the purpose of the legislature was to return to the statute as it existed prior to 1919. What work was done by the appellants on their lands by virtue of which appellee seeks to annex their lands was done between 1919 and 1923, and unless the 1923 amendment is construed to be retroactive in its effect it could not be held to apply in this case. It may well be doubted whether, if the legislature had intended to give the 1923 amendment a retroactive effect, it had the power to do so, but it seems clear it had no intention to do so. The intention to give a statute a retroactive effect must clearly appear from the act. (*People* v. *Lower,* 236 Ill. 608; *People* v. *Deutsche Gemeinde,* 249 id. 132.) The burden was on appellee to prove benefits as well as connection, and we cannot hold this has been done. We do not overlook that appellee proved some years ago, and after the district was organized, the appellants, or some of them, or their predecessors in title, signed a petition to have their lands included in the drainage district. Nor have we

overlooked the fact that the judge presiding at the trial personally viewed the premises.

The record does not justify the judgment, and it is therefore reversed and the cause remanded.

*Reversed and remanded.*