The People of the State of Illinois ex rel. Road District No. 12, Appellant, v. Cache River Drainage District, Appellee.

October term, 1928.  Heard in this court at the Opinion filed February 1, 1929.

C. S. MILLER, for appellant.

H. A. EVANS, for appellee.

MR. JUSTICE NEWHALL delivered the opinion of the court.

This is a mandamus suit brought in the name of the People of the State of Illinois on relation of Road District No. 12 to compel the Cache River Drainage District to repair a bridge across one of the ditches of the drainage district located within said road district known as the "Hackberry Ditch," which crosses a north and south public road at a point south of and along the right of way of the Chicago and Eastern Illinois Railroad Company.

Extending from the bridge north across the railroad there is a slight elevation of land for a distance of about 300 feet. When the railroad was built in 1900, it constructed a solid embankment through the low ground to the east of the point in question, and left no place for the water which collected south of the railroad to drain. In constructing the embankment the railroad company left borrow pits along the south side of the right of way. Later on, in 1908, these borrow pits were cleaned out in order that the water might drain off, and a bridge was constructed across the ditch on the public road at the point in question.

In June, 1911, at the request of the adjacent property owners, the railroad company again cleaned out and deepened these borrow pits so as to better drain the adjoining landowners' property. In 1915, appellee, having been organized as a drainage district under the Levee Act, Cahill's St. ch. 42, ¶ 1 et seq., entered into a contract with the railroad company, whereby the drainage district secured the right to construct a drainage ditch on the south part of the railroad company's right of way and along the line of the borrow pits.

In this contract the drainage district agreed to pay the railroad company for the excavation which had already been made, and the district took over the ditch, and, together with the railroad, replaced the bridge which was removed at the time the drainage district enlarged the ditch.

The railroad company's right of way extended in an easterly and westerly direction from Boaz to Cypress, and, prior to the building of the railroad, the public highway in question extended north and south across a low marshy slough known as Hackberry Slough. This slough took its rise in a large irregular pond known as Hackberry Pond, near the Village of Boaz, which is about 2 miles east of the highway in question. Into this pond drained all the waters from the land to the north, east and south of Boaz, and into Hackberry Slough drained all the waters that fell on this watershed, the latter being about 3 miles long and 2 miles wide.

. The water from the pond and Hackberry Slough drained westward, and, prior to the building of the railroad, its course ran northward about 300 feet east of the bridge in question, then drained northwest around a tongue of high land in a southward direction, crossing the railroad, which was afterwards built, at a point about a thousand feet west of the bridge in question, and then the slough drained into what is known as Post Creek Cutoff.

In the original construction of the railroad eastward in 1900, it first encountered this slough at a point known as "J–3535" and there the railroad constructed a trestle in its line of railway to take care of the water of the slough as it came from the north side of the railroad. As the railroad was built eastward, it next encountered this Hackberry Slough at a point about 300 feet east of the bridge in question, where it crossed the bed of the slough, and there it constructed a solid embankment across the bed of the slough, some 5 or 6 feet high, making no provision for the water to follow the old slough bed in its northwestward course at this point.

The line of the railroad was constructed straight to Boaz from this point, a distance of about 2 miles, keeping its embankment along the north side of the slough,

but on very low ground requiring considerable fill, which was taken from large continuous borrow pits forming a ditch or drain for water in Hackberry Slough, as it flowed toward the west in times of high water.

The horseshoe bend in the old bed of the slough, as it lay north of the railroad after the construction thereof, crossed the public highway in question at a point about 300 feet north of the bridge in question, and, prior to the building of the railroad, the public road authorities had built and maintained a bridge over the old bed of the slough.

After the building of the railroad and the cutting of the railroad ditch on the south side of the track, the public highway authorities gradually reduced the size of their old bridge, and, after the construction of the drainage ditch and the bridge in question, the public road authorities removed the old culvert at the point 300 feet north of the bridge in question, and constructed their highway solidly across the old bed of the slough.

The trial court, after hearing the evidence, entered an order denying the prayer of appellant's petition, and this appeal is prosecuted by appellant.

It is contended by appellant that the evidence shows that where the drainage ditch intersects the public highway at the bridge in question there was no natural watercourse, and that, under the law, the drainage district was obligated, when it built the original bridge in question, to not only restore the highway to its former state of usefulness, but also must forever thereafter maintain the bridge at such point at the expense of the drainage district.

Appellant further contends that the only question at issue in the case is whether or not the drainage ditch at the point in question was a natural watercourse, or whether it is purely an artificial ditch of said drainage district.

Appellee concedes that it was its duty, when the drainage commissioners constructed the Hackberry Ditch along the right of way of the railroad by enlarging the ditch which it found there, to either restore the highway for public travel by replacing the bridge which had been removed or by building a new bridge. Appellee further contends, however, that when this was done, it had discharged its full duty under the law, and is not bound to keep the bridge in repair.

Appellee further contends that the evidence shows that this so-called railroad ditch, which the railroad had constructed on its own lands for the purpose of draining water from the bed of the Hackberry Slough east and west of the bridge in question, was a natural watercourse when the drainage commissioners commenced to use it; that the railroad had substituted that part of their ditch immediately east and west of the bridge in question in place of the old slough bed, which formerly lay on the north side of the railroad, and that, when the railroad company made this substitution of drainage ditches in 1900, in order to save the building of another trestle, it thereby dedicated that part of their right of way for the public use of drainage, and that all the dominant lands above that point in that watershed had the absolute and perpetual right of drainage through the railroad ditch along the south side of their right of way.

It is clear from this record that, prior to the construction of the railroad embankment, there was a slough or natural depression, which crossed the railroad east of the bridge in question, then angled northward about 300 feet, and then westward in a semi-circle course, where it joined the natural outlet known as Post Creek. In times of high water or freshets, there was considerable current in this slough bed from Hackberry Pond along the above course.

In *Town of Bois D'Arc v. Convery,* 255 Ill. 511, 514,

it was said, in reference to what constitutes a natural watercourse, as follows:

"While there may not have been a stream at that point across appellant's land with well-defined banks and bed, or the water may not have flowed across appellant's land at that point at all seasons of the year, that was not necessary. In *Ribordy v. Murray,* 177 Ill. 134, on page 140, it was said: 'It is true, there was no well-defined water-course in the sense in which that term is often used, having well-defined banks and bed. But that was not necessary. If the conformation of the land was such as to give the surface water flowing from one tract to another a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its flow is a watercourse, within the meaning of the rule applicable to this class of cases.' "

Identical principles of law are adhered to and reiterated in the following cases: *Minnie Creek Drain. Dist. v. Nation,* 315 Ill. 332, 338; *Winhold v. Finch,* 286 Ill. 614, 616; *St. Louis Merchants' Bridge Terminal R. Ass'n v. Schultz,* 226 Ill. 409.

In view of the principles of the foregoing cases, we are of the opinion that the course of Hackberry Slough, as it existed prior to the construction of the railroad embankment, constituted a natural watercourse.

Appellant contends that, because the drainage commissioners located their ditch along the line of the railroad ditch, and the further fact that the railroad ditch and drainage ditch were not cut to follow around the old course of the Hackberry Slough north of the railroad so as to intersect the public highway at the identical point where it formerly crossed the bed of the slough, the drainage ditch along the south side of the railroad is to be deemed "wholly and entirely an artificial ditch or drain." Appellant further contends

that, by reason of such manner of construction, it is relieved of the burden of keeping the bridge in question in repair.

The provisions of section 55, chapter 42, of the Revised Statutes, Cahill's St. ch. 42, ¶ 53, exempts a drainage district from the duty of keeping in repair bridges where the drainage ditch is constructed "on the line of any natural depression, channel or watercourse."

When the railroad company, in 1900, constructed a ditch along the south side of its right of way for the purpose of carrying the waters and furnishing a new and shorter outlet for Hackberry Slough, with the express or implied consent of all parties, who might be adversely affected by such change, then such new ditch became subject to all the burdens of a natural watercourse, and, for all parties concerned, it became a natural outlet of Hackberry Slough. The adjacent landowners, who drained their land into the slough, acquiesced, and the public road authorities abandoned their old bridge at the former point of crossing, 300 feet north of the railroad, and filled in the slough where it crossed the road. For more than 20 years prior to the filing of appellant's suit, the ditch along the south side of the railroad has been used as a natural outlet for Hackberry Pond and Slough.

In *Broadwell Special Drain. Dist. v. Lawrence,* 231 Ill. 86, it was held that, where water has been diverted from its natural watercourse and has been established in an artificial channel through which the water has flowed for more than 20 years, mutual and reciprocal rights were acquired by prescription in the new channel, and that owners of land thereby acquired the right to use the artificial channel as if it were a natural stream.

When the drainage district, in 1915, located its line of ditches for draining Hackberry Slough, it was its

duty, under the law, to construct its ditch through and along the line of Hackberry Slough as it coursed along the railroad right of way, provided that was the most efficient and best way of obtaining adequate drainage of the lands of the district. (See *Dettmer v. Illinois Terminal R. Co.,* 287 Ill. 513.)

At the time the drainage district located its ditch along the line of the railroad ditch, it was a natural watercourse, and it became the duty of the drainage district, in case it was necessary to remove the bridge at the place in question, to rebuild the bridge and restore the highway to its former state of usefulness. (See *People v. Block,* 276 Ill. 286.)

When the bridge is restored in kind and the highway restored to its former state of usefulness, the duty of the drainage district is discharged, and the future upkeep and care of the bridge devolves upon the public road authorities. (See *People v. Peeler,* 290 Ill. 451.)

It was held in the case of *People v. Peeler, supra,* page 457, as follows:

"The drainage district is itself a municipal corporation, and there is no authority under the law to compel it to assume any duties or liabilities of the road district with regard to building bridges on public highways over natural water-courses, as required by the statute on roads and bridges. While a road district may not be required to build bridges over artificial channels cut through its roadway by a drainage district, there can be no question that its duty to build bridges on the highways across water-courses is continuous, even though such water-courses are used by the drainage district as part of its ditches. . . . It is the duty of a railroad company or of the officers of a road district to construct bridges across natural water-courses of sufficient length and height above the bed of the stream to subserve the demands of the public with respect to their rights of drainage, not

only as they exist at the time of crossing such watercourses but for all future time. (*Chicago, Burlington and Quincy Railway Co. v. People,* 212 Ill. 103.) When a natural water-course is just deepened and widened by a drainage district sufficiently for necessary and proper drainage, it will not require longer bridges, as a rule, than were necessary or proper to be built by the road district prior to such widening and deepening. This is particularly true where the drainage district secures a proper outlet and increases the natural fall of the water-course.''

Prior to the time the railroad constructed its embankment, appellant had the continuing burden of bridging the natural waterway of the Hackberry Slough where it crossed the public highway north of the railroad, not only for waters that then flowed but for any increase thereof occasioned by constructive drainage works, so long as the natural watershed was not changed. (See *Chicago, B. & Q. R. Co. v. People,* 212 Ill. 103.)

It is not claimed that the natural water run-off of any other watershed has been diverted into Hackberry Slough. Appellant has been relieved of the obligation to bridge Hackberry Slough at the point where it formerly crossed the highway, 300 feet north of the bridge in question, and to require it to repair and maintain the bridge in question does not deprive it of any legal rights, or cause it to assume any burdens not imposed upon it by law.

For the reasons aforesaid, we are of the opinion that the judgment of the circuit court denying appellant's petition for mandamus should be affirmed.

*Affirmed.*