THE PEOPLE *ex rel.* DONALD PETERS, Ex'r of the Estate of Clarence Peters, Plaintiff-Appellant, v. LAVERNE O'CONNOR *et al.*, Defendants-Appellees.

Third District   No. 3—99—0354

Opinion filed February 25, 2000.

Charles E. Ruch, Jr. (argued), of Kankakee, for appellant.

Wayne O. Smith (argued), of Paxton, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff Donald Peters, as executor of the estate of his father, Clarence Peters, filed suit against the commissioners of Milks Grove Special Drainage District No. 1, and the District itself (collectively District), seeking an order of *mandamus* to force the District to repair a bridge over a drainage ditch which would allow Peters access to a landlocked portion of his father's farm. The trial court (1) ordered the District to repair or replace the bridge, at least to the specifications of the bridge as it was originally built; (2) denied Peters damages for crop loss for the period of time he had no access to the landlocked portion of his farm; and (3) held that the District had a 1.65-acre easement as the result of this court's decision in *Peters v. Milks Grove Special Drainage District No. 1*, 243 Ill. App. 3d 14, 610 N.E.2d 1385 (1993). We hold that a drainage district has a duty to maintain, repair or replace a bridge to landlocked property created by a drainage ditch and must do so in a reasonable manner so as to provide a passageway for today's farm uses. Moreover, we hold that damages for crop loss need not be calculated with mathematical certainty, but that it is enough to show realistically expected crop yield and value.

## FACTS

In 1990, the District dredged a drainage ditch separating Peters' farmland into two parcels consisting of 54 acres on one side of the ditch and 17 acres on the other. The District had a previously existing easement in the land alongside the ditch but, in dredging the ditch in 1990, soil and debris were placed on Peters' land beyond the easement. Following the dredging, the slopes of the ditch began to erode. The erosion caused damage to a bridge crossing the ditch which was built by the District prior to 1956 pursuant to the Illinois Drainage Code (Act) (70 ILCS 605/12—5 (West 1998)). The bridge was Peters' only access to the 17-acre parcel. That property became useless to Peters when the bridge could no longer handle the weight of his farm equipment.

In 1993, this court ruled that the District had an obligation to repair and maintain the bridge pursuant to the Act. See *Peters*, 243 Ill. App. 3d at 23, 610 N.E.2d at 1391. We also held that the District had "taken" 1.65 acres of Peters' land when it placed soil and debris beyond its easement and we ordered the District to pay just compensation in the amount of $4,125. *Peters*, 243 Ill. App. 3d at 20, 610 N.E.2d at 1390.

When the District failed to repair the bridge, Peters filed this suit for an order of *mandamus* to force the District to do so. In the same complaint, Peters asked for damages for crop loss from the 17

landlocked acres for the years 1992 through 1998 when he could not access the property due to the state of disrepair of the bridge. The District filed a counterclaim requesting that the court order Peters to convey to it the 1.65 acres of land for which it had paid just compensation.

The trial court denied the District's claim for a conveyance of the land, holding instead that the appellate court gave the District an easement. The court ordered the District to repair or replace the bridge, at least to the specifications of the bridge when it was originally constructed. Further, the court denied Peters damages for crop loss from the landlocked acres because, it concluded, Peters had not provided sufficient evidence of his damages. Peters now appeals.

Other relevant facts will be discussed as they become pertinent to the analysis.

## ANALYSIS

The first issue on appeal is whether the trial court erred when it held that the Act (70 ILCS 605/12—5 (West 1998)) requires only that the District repair the bridge to the condition in which it existed when it was originally erected.

The primary rule of statutory construction is to give effect to the legislature's intent. *Doyle Plumbing & Heating Co. v. Board of Education, Quincy Public School District No. 172*, 291 Ill. App. 3d 221, 683 N.E.2d 530 (1997). When construing the language of a statute, a court should consider its plain and ordinary meaning within the overall context of its reason and necessity and its stated purpose. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 282 Ill. App. 3d 672, 669 N.E.2d 628 (1996). This court reviews matters of statutory interpretation *de novo. A.B. Dick Co. v. McGraw*, 287 Ill. App. 3d 230, 678 N.E.2d 1100 (1997).

■ This issue is governed by the first paragraph of section 12—5 of the Act because the District was organized prior to June 28, 1919, and the bridge in question was erected prior to January 1, 1956. Paragraph one of section 12—5 states in pertinent part:

> "In districts organized prior to June 28, 1919, under the Farm Drainage Act, *the districts shall continue to be liable for the construction, reconstruction and maintenance of at least one bridge or proper passageway over each open ditch* constructed or ordered constructed prior to the effective date of this Act [(January 1, 1956)] where the same crosses any enclosed tract or parcel of land in such a manner that a portion thereof is landlocked and has no access from any public highway other than by a bridge or passageway over the ditch. The cost of constructing, reconstructing and maintaining such bridge or crossing shall·be paid by the district***." (Emphasis added.) 70 ILCS 605/12—5 (West 1998).

In the first *Peters* case, this court held that the District must "maintain the bridge in a safe condition so that Peters can use the bridge for access to the landlocked portion of his farm." *Peters*, 243 Ill. App. 3d at 23, 610 N.E.2d at 1391. Peters contends that this language implies that because he must have access to the farm property, whatever bridge is constructed or repaired must be able to handle modern farm machinery.

Whether a drainage district must repair or replace a bridge constructed by the district pursuant to section 12—5 of the Act in such a condition that it can accommodate today's farm machinery is an issue of first impression. While there is no case law directly on point, we find that *People ex rel. Speck v. Peeler*, 290 Ill. 451, 125 N.E. 306 (1919), provides valuable guidance on how to approach the analysis of this issue.

In *Speck*, the drainage district removed several bridges when constructing a ditch and subsequently replaced them as they originally existed. The highway commissioner argued that when the bridges eventually needed to be replaced with more modern and permanent structures, it was the drainage district's responsibility to do so. The court held that the duty to replace the bridges still rested upon the highway commissioner because it was he who "possess[ed] the only authority conferred by law for levying a tax or incurring a liability for public road and bridge purposes." *Speck*, 290 Ill. at 456-57, 125 N.E. at 308. The court went on to state that the highway commissioner's duty to build bridges on the highways across waterways is continuous. *Speck*, 290 Ill. at 457, 125 N.E. at 309.

In this case, it is the District that is empowered to levy taxes for the purpose of maintaining bridges. See *Peters*, 243 Ill. App. 3d at 22, 610 N.E.2d at 1391. Moreover, the plain language of section 12—5 of the Act indicates that the District's duty to construct, reconstruct and maintain at least one farm bridge to landlocked property is continuous. See 70 ILCS 605/12—5 (West 1998).

Paragraph one of section 12—5 deals entirely with bridges erected by the District after the construction of a drainage ditch creates a landlocked portion of farmland. The Act specifically requires the District to continue to reconstruct and maintain at least one "proper passageway" to the landlocked property. 70 ILCS 605/12—5 (West 1998). In short, if farmers are unable to access their land with necessary farm equipment due to the District's failure to maintain its bridge in a fashion that will allow it to accommodate modern farm equipment, then farmers have effectively been denied passage to their land as if the bridge did not exist.

While *Speck* concerned the maintenance of public roads and

bridges, and not those used solely by farmers to cross drainage ditches constructed on their property, we find this difference to be inconsequential to a decision on this issue. It is the public as a whole that benefits from the creation of drainage ditches and not simply the farmers who must rely upon the bridges crossing them to access all parts of their farmland. Thus, it is the public as a whole that must contribute to the cost of maintaining district bridges through the levying of taxes by the drainage district.

■ We now hold that paragraph one of section 12—5 of the Act requires a district that has landlocked a portion of a farmer's land by way of a drainage ditch to provide a bridge or passageway to the landlocked property capable of sustaining modern farm equipment. We do not mean to suggest that the District is required to construct the bridge to Peters' specifications or to the specifications of his expert witness. We hold only that whatever bridge the District constructs must be appropriate to accommodate modern farm equipment.

The next issue on appeal is whether the trial court erred when it found that Peters had not presented sufficient evidence to award damages for crop loss for that period of time when Peters was unable to access the landlocked property.

The trial court here denied Peters damages for crop loss because it found that Peters had failed to offer evidence of soil type, crop rotation, or production history. The court concluded that it could not calculate damages with any degree of certainty without such evidence.

We will not disturb a trial court's judgment as to damages unless it is against the manifest weight of the evidence. *Royal's Reconditioning Corp. v. Royal*, 293 Ill. App. 3d 1019, 689 N.E.2d 237 (1997). A judgment is against the manifest weight of the evidence if it appears to be unreasonable, arbitrary or unsupported by the evidence. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 658 N.E.2d 450 (1995).

■ Absolute mathematical certainty is not required to fix the amount of damages. *Rhodes v. Sigler*, 44 Ill. App. 3d 375, 357 N.E.2d 846 (1976). In *Johnson v. Sleaford*, 39 Ill. App. 2d 228, 237-38, 188 N.E.2d 230 (1963), the court held that the measure of damages for crop loss is ascertained by the:

> "probable amount of grain the crop would produce, and the probable value of the same in the market at the market season, deducting therefrom the necessary cost of cultivating, harvesting, and taking the same to market; the amount and value are necessarily hypothetical and an opinion thereon can only be formed by considering the average yield at the place and under like circumstances and the average value of the products in the market at the place and time of market [citation]."

■ Peters testified that the crops grown on the landlocked 17 acres were always the same as those planted on the adjoining 54 acres across the ditch and that the yields were almost identical. Peters then used the crop yield from the 54 acres between 1992 and 1998 to figure what the yield would have been from the 17 acres had he been able to farm them. He then subtracted the proportionate cost of taxes, chemicals and seeds to come up with a figure of $7,990 which he testified was his loss. None of this testimony was refuted by the District.

We find that Peters sufficiently proved damages for crop loss consistent with the formula set forth in *Johnson*. Accordingly, we reverse the trial court's decision denying Peters damages for crop loss in the amount of $7,990 because that decision was against the manifest weight of the evidence.

The final issue on appeal is whether the trial court erred in ruling that the District obtained an easement in the 1.65 acres of land for which it was ordered to pay just compensation.

In a counterclaim to this action, the District requested the court to order Peters to convey to it the 1.65 acres of land by virtue of our decision in the first *Peters* case. See *Peters*, 243 Ill. App. 3d at 20, 610 N.E.2d at 1390. The circuit court denied the request for a conveyance, finding instead that this court had given an easement over the 1.65 acres which the District may continue to use. Peters appeals this decision, arguing that this court never gave the District an easement in the additional acres. On appeal, the District does not seek a conveyance of the land but, instead, contends that the court correctly granted it an easement in the 1.65 acres.

In the first *Peters* case, we found that the District's original easement was limited to the extent of its prior actual use and, in piling dirt on Peters' land, the District had exceeded the scope of its easement. We then awarded Peters $4,125 because the District is a public agency prohibited from "taking" private property without just compensation. *Peters*, 243 Ill. App. 3d at 20, 610 N.E.2d at 1390. This court never discussed the effect of the "taking" in terms of a property interest acquired by the District.

■ Eminent domain is defined as the right of a sovereign to condemn private property for public use and to "appropriate the ownership or possession of such property." *Leonard v. Autocar Sales & Service Co.*, 392 Ill. 182, 64 N.E.2d 477 (1945). If, during the construction of a public improvement, earth material invades the real estate of another so as to destroy or impair its usefulness, that action by the sovereign qualifies as a "taking" even though the sovereign made no attempt to formally condemn it. *Horn v. City of Chicago*, 403 Ill. 549, 87 N.E.2d 642 (1949). To constitute a "taking" through

eminent domain proceedings, there must be actual physical invasion of the property. Otherwise, the landowner has only an action at law for damages to the property. *Luperini v. County of Du Page*, 265 Ill. App. 3d 84, 637 N.E.2d 1264 (1994).

■ In the instant case, there was actual physical invasion which amounted to a "taking." This court held that Peters was deprived of 1.65 acres of land that were "taken by a public agency for public use." *Peters*, 243 Ill. App. 3d at 20, 610 N.E.2d at 1389. After the land was valued at $2,500 per acre, the court awarded Peters "just compensation" in the amount of $4,125. A careful review of the *Peters* decision indicates that Peters was paid for the whole 1.65 acres rather than damages only. Thus, we conclude that the language used by this court and the method of valuation of Peters' loss indicates that this court intended to give the District some property right in the land. Accordingly, we find that the circuit court did not err when it granted the District an easement in the 1.65 acres with a right to its continued use.

For the foregoing reasons, the judgment of the circuit court of Iroquois County is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this order.

Affirmed in part and reversed in part; cause remanded.

HOLDRIDGE and HOMER, JJ., concur.