(No. 16088.—Reversed and remanded.)

THE PEOPLE *ex rel.* Will Smith, Highway Commissioner, Appellant, *vs.* THE BOARD OF SUPERVISORS OF McLEAN COUNTY, Appellee.

*Opinion filed October 28, 1924—Rehearing denied Dec. 5, 1924.*

1. DRAINAGE—*when plan of a ditch may be changed to follow channel of stream under bridge.* Where the original plan of a drainage ditch will necessitate the construction of an entirely new bridge in a public highway over a natural water-course, which is the natural channel for the drainage of the district and is within the district's right of way, the commissioners in constructing the ditch may change the plan and follow the natural channel under the bridge, provided it leaves the bridge in its original condition and does not undermine the abutments; and no liability can attach to the district for ordinary wear of travel on the bridge, its natural decay or original defective construction.

2. HIGHWAYS—*when township is entitled to county aid in constructing bridge.* Under the statute a township which has complied with the statutory requirements is entitled to county aid in the construction of a new bridge over a public highway where the old bride is unsafe because of original defective construction or ordinary wear and where no other corporation than the township is responsible for the construction of a new bridge.

3. SAME—*bridge over stream must be sufficient to allow for natural drainage.* Where a township constructs a bridge in a highway

over a natural water-course the bridge must be of sufficient length and height above the bed of the stream to subserve the demands of the public with respect to their rights of drainage, not only as they exist when the bridge is constructed but for all future time.

APPEAL from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

W. W. WHITMORE, for appellant.

LESTER H. MARTIN, State's Attorney, and JOSEPH W. DEPEW, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

Anchor township, in McLean county, Illinois, through its commissioner of highways, petitioned the board of supervisors for county aid, according to statute, to build a new bridge at a point wholly within Anchor township. The board denied the petition, and this suit was brought in the name of the People, on the relation of Will Smith as commissioner of highways of Anchor township, against the board to compel it to grant such county aid. The petition is in the usual form and contains all of the statutory averments necessary to entitle appellant to the writ as prayed. Appellee filed three pleas denying appellant's right to the writ:

*First*—That the bridge in question was in good condition until impaired by the construction of the Mackinaw drainage ditch; that the drainage corporation undermined the abutments of the bridge and rendered it unsafe for travel, so that it was condemned by the relator, therefore the duty was on the drainage corporation and not on Anchor township.

*Second*—That the bridge was not constructed according to plans approved and confirmed by the county court, and the deviation in the channel of the stream caused the washing out of the abutments and caused the destruction

314—17

of the bridge; that the burden was on the drainage corporation and not on Anchor township.

*Third*—Avers failure to construct the bridge according to plans approved by the court, which caused the bridge to be destroyed; that the officers of Anchor township knowingly and willfully permitted such faulty construction, therefore Anchor township is estopped.

The evidence shows that by the plans and specifications for the ditch as approved by the county court, the center of the ditch where it crossed the public highway at the place in question was not in the center of the stream under the bridge then upon said highway, and that the commissioners of the drainage district, when building the ditch, changed its course so that the center of the ditch was in the center of the stream underneath the bridge, which stream was the natural channel for the drainage of the district which was being drained and which was wholly upon the right of way of the drainage district. This change the drainage commissioners had a right to make. (*Reynolds* v. *Milk Grove Drainage District,* 134 Ill. 268; *People* v. *Gibson,* 293 id. 80.) There is no evidence in the case that this deviation in the channel and stream caused the washing out of the abutments and the destruction of the bridge, and so no further consideration need be given to the questions raised by the second and third pleas.

To these pleas appellant filed three replications, to which demurrers were sustained. Thereupon appellant filed additional replications, the first averring that in the making of the drainage improvement at the point in question along the channel of the stream, the excavation did not go as deep or deeper than the abutment foundations, as in the first plea supposed, and did not disturb or undermine the abutments of the bridge nor the wings thereof and did not remove the lateral support from the abutments but permitted both abutments to stand as originally built. The second additional replication avers, in addition to the matters

averred in the preceding replication, that the construction of the drainage improvement was made in substantial compliance with the order of the court and in substantial accordance with the engineer's plans and specifications; that the improvement at the point of the bridge in question was confined to the natural water-course or channel of the Mackinaw river as it then existed and wholly on the right of way acquired by the drainage district for construction purposes, and that in crossing the highway at the point in question the drainage district utilized the natural channel of the river as a ditch, which was wholly upon its right of way, and without disturbing or undermining the abutments of the bridge and without diverting the channel or ditch of the stream as in the second plea supposed, etc. With the issue of fact thus made a trial was had before the court, a jury having been waived, and a judgment in favor of the appellee was entered, adjudging costs of suit against appellant and awarding execution therefor, from which judgment an appeal has been perfected to this court.

The vital question in this case is whether or not Anchor township is responsible, either wholly or in part, for the construction of the bridge in question. If it is, then the law is mandatory that the county board of McLean county shall appropriate from the county treasury a sufficient sum to meet one-half of the expenses of said bridge, appellant having complied with all the statutory requirements, as shown by the stipulation of the parties. Smith's Stat. 1921, chap. 121, sec. 40; *People* v. *Wabash Railroad Co.* 265 Ill. 530.

It is the contention of appellee that Mackinaw Drainage District, and not Anchor township, is responsible for the building of the bridge in question, and that county aid is therefore improper. The uncontradicted evidence in the case shows that the bridge in question is wholly within Anchor township and is part of the public highway built over the Mackinaw river, which has been a natural water-

course for fifty years; that this bridge was built in 1894 and was repaired in 1910 by re-building the abutments, using the old rock, with concrete; that the re-built abutments were not acceptable to the commissioners of highways and were rejected because of defective construction, which condition the contractor tried to correct by putting facings about the abutments, after which the job was accepted; that the bridge was constructed with a platform resting on two abutments, with wings built upon either side of the stream, which platform could be lifted off and replaced at will; that the improvement of the Mackinaw river for drainage purposes made by the drainage district consisted in straightening, widening and deepening the channel of the river so as to more efficiently drain the agricultural lands adjacent to the river and naturally draining into it; that the drainage commissioners in constructing the improvement at the point where the bridge is located confined their operations to the natural channel of the stream, and that in doing the work in July, 1920, they lifted the bridge platform from the abutments and rolled it back on the roadway to allow the dredge-boat to pass along the thread of the stream between the abutments, after which they replaced the bridge as it theretofore had been; that thereafter the bridge was opened to public use generally for a month and a half, when it was condemned for heavy traffic, but thereafter it was used continuously for light traffic until the spring or early summer of 1922, when it became unsafe for use as a highway; that some time in August, 1920, a twelve-ton tractor and a five-and-a-half-ton threshing separator were driven over the bridge without affecting it; that there were three occasions after the making of the drainage improvement that the flood waters of the Mackinaw overflowed its banks; that the operations of the drainage commissioners were at all times confined within the boundaries of the right of way secured for construction purposes, and in passing between the abutments of the bridge

in question the improvement consisted of deepening the center of the channel about five feet with a dredge-boat, which cut a channel between the abutments to an eight-foot bottom with a one-in-one rise; that the distance between the abutments was at least twenty-five feet, and that when the excavation of the channel was made by the dredge-boat in passing between the abutments of the bridge in question, it left a berme of earth from two and one-half to three feet wide along both abutments as lateral support thereto; that in making the improvement of the Mackinaw river for drainage purposes the drainage commissioners did not excavate or cut a deeper or wider channel than was necessary to furnish adequate and necessary drainage to the adjacent agricultural lands naturally draining into the Mackinaw river; that the abutments were not physically affected by the passage of the dredge-boat between them or the making of such excavation.

The only fact about which there is any apparent conflict in the evidence is whether the drainage district, in making its improvement, excavated as deep or deeper than the foundations of the abutments, so as to undermine them and make them insecure. But this conflict is more apparent than real. All the witnesses in the case who testified to having themselves made investigation of this question testified that the excavation made by the drainage commissioners was not as deep as the foundation of the abutments. The only evidence to the contrary is a profile of the location made for the purpose of the work, offered in evidence, which shows that the bottom of the excavation was intended to be 13.94 feet below the top of the bridge. The evidence as to the height of the abutments varies from 11 to 13 feet. There is no evidence in the record, however, that the excavation was actually made in accordance with this plan, and there is no evidence as to the height of the top of the bridge above the top of the abutments. The county superintendent of highways of McLean county also

testified that he was present at an examination made by
Will Smith, the commissioner of highways of Anchor town-
ship, and that Smith dug down and found that the bottom
of the abutments was quite a little higher than the stream.
Smith, however, testified that when he made this examina-
tion, which was the basis of the condemnation of the bridge,
he was mistaken in his belief that the bottom of the abut-
ments was higher than the bottom of the excavation, and
that a later examination made by him revealed the fact that
what he then supposed was the bottom of the abutments
was not the bottom of the abutments but was forms used
for the concrete which had been left there when the work
was done in 1910, and that the abutments extended two
and one-half feet below this point. There is also some ex-
pert evidence to the effect that if the excavation was made
lower than the bottom of the abutments it would render
the bridge unsafe and liable to be undermined by the water.
The undisputed evidence, however, is that the destruction
of the bridge was caused by the west abutment breaking
off two or three feet above the berme of earth and caving
in. This abutment was not undermined by the water, but
at the time it caved in the berme of earth was still there
as it had been left by the drainage commissioners. A por-
tion of the wing of the east abutment had been undermined
but it still remained standing. Appellee's expert, in answer
to the question asked by appellee's counsel, "What do you
say caused this west abutment to fall in?" replied: "On
account of the water freezing the dirt and the depression
of the dirt; the footing is still there, but the top is off; it
was a crack that caused it to fall over."

Had the excavation in question been made at the place
described in the original plans and specifications, then it
would have been the duty of the drainage commissioners
to have built an entirely new bridge at the place in question.
(*People* v. *Block,* 276 Ill. 286; *Brougher* v. *Lost Creek
Drainage District,* 277 id. 156.) This they did not do but

utilized the natural water-course for the drainage of the district.  It was the right of the drainage district to have the natural water channel at such crossing of sufficient capacity to give the drainage district proper drainage.  When the township of Anchor in 1894 built the bridge in question it was its duty to construct the bridge across this natural water-course of sufficient length and height above the bed of the stream to subserve the demands of the public with respect to their rights of drainage, not only as they existed at that time but for all future time.  (*Chicago, Burlington and Quincy Railway Co.* v. *People,* 212 Ill. 103; *People* v. *Peeler,* 290 id. 451.)   When the drainage commissioners, after making the excavation, replaced the platform of the bridge in its former position, so far as the evidence in this case shows they had performed their full duty, which was to restore the road and bridge to their former state of usefulness and efficiency.   The duty of the road district to repair or re-build the bridge after it was restored still rests upon the road commissioners for the road district.  The evidence tends to show that when the abutments were re-built in 1910 they were defectively constructed, and that the crack in the west abutment, which caused it to cave in, existed prior to the excavation by the drainage commissioners.  No liability can attach to the drainage district, on account of such bridge, to repair or re-build the same, when such repairing or re-building is only required by reason of public travel, natural decay or of original defective construction.

The judgment of the court was manifestly against the evidence in the case, and it is reversed and the cause remanded to the circuit court, with directions to grant the writ of *mandamus* as prayed for in appellant's petition.

*Reversed and remanded, with directions.*