**The People of the State of Illinois ex rel. Sibert Kurtz, Commissioner of Highways, etc., Appellee, v. Layo W. Meyer et al., Appellants.**

**Gen. No. 8,202.**

February term, 1927. Heard in this court at the February term, 1927. Opinion filed May 2, 1928.

PAUL F. GROTE and WILLIAM & BARRY MUMFORD, for appellants.

WILLIAMS & WILLIAMS, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

The appeal taken in this case was transferred by the Supreme Court to this court. (*People ex rel. Sibert Kurtz v. Meyer,* 328 Ill. 122.) And the facts involved in this controversy are summarized in the opinion of the court transferring the case:

"Sibert Kurtz, commissioner of highways of Cincinnati township, Pike county, in the name of the People of the State of Illinois upon his relation, filed his petition in the circuit court of Pike county for a writ of *mandamus* against appellants. The petitioner alleged his official position, the organization of Sny Island Levee Drainage District under the Levee act in 1880, and the organization of Hadley Creek sub-district thereof; that appellants are the duly appointed, qualified and acting commissioners of said district and sub-district, and that after the organization of the sub-district the then commissioners thereof caused to be made and excavated a large drainage ditch of the width of forty feet and the depth of eight feet, with levees twelve feet high on each side thereof, over and across a public highway in the town of Cincinnati, at a point where theretofore there was no channel, depression or water-course, and that thereafter they restored the highway to a condition suitable to public travel by constructing approaches of earth, a wooden trestlework 220 feet in length on the east side and 40 feet in length on the west side of the drainage ditch, and an iron bridge over the ditch; that the flooring upon the bridge and trestlework is of oak boards, and that it has rotted and decayed to such an extent as to render the same unsafe and dangerous to public travel, and that although the commissioners of the sub-district

had repeatedly been asked to repair the same and render it safe for public travel they neglected to do so, and as a result of such neglect the traveling public have been forced to abandon the use of the bridge and highway and detour for a great distance in order to cross the drainage ditch. The petition prayed for a writ of *mandamus* commanding appellants to proceed to repair the trestlework and bridge and place the same in safe condition and suitable for public travel. A demurrer filed to this petition was overruled, and appellants electing to stand by their demurrer, the writ was awarded. This appeal followed.

"The only question involved in this case is whether, when a drainage district organized under the Levee act excavates a channel across an established public highway, thereby temporarily destroying a segment of such highway at a point not in the line of a natural channel, depression or water-course, and thereafter restores such highway to its former condition of usefulness and efficiency by the construction over the cut of a good and sufficient bridge and approaches thereto, such drainage district has done all that is required of it in respect to such highway, or is it still continuously bound to repair and mend such bridge whenever it shall become impaired and unsafe for use by the action of the elements."

The statute provides that the commissioner of highways shall "have general charge of the roads and bridges of his town or district, to keep the same in repair and to improve them so far as practicable." It also makes it the duty of the commissioner of highways "To determine the taxes necessary to be levied on property within his town or district for road and bridge purposes, . . . and said highway commissioner, in determining the amount to be levied, shall state separately the several amounts to be levied for the construction of roads, the maintenance of roads, the construction of bridges, the maintenance of bridges, the purchase of

machinery, the repairs to machinery, the oiling of roads, and the prevention and extirpation of weeds.'' Cahill's St. ch. 121, ¶ 56; chapter 121, section 50, Smith-Hurd Revised Statutes. A bridge which has been built over a natural or an artificial channel to restore a public highway, and the highway is thereby restored, becomes a part of such public highway, and under the statute would necessarily pass under the control of the highway commissioner of the town where such highway bridge is situated.

The provisions of section 55 of the Levee Act, Cahill's St. ch. 42, ¶ 53, placed the burden and expense of building or rebuilding and repairing bridges to restore a public highway, which had been destroyed by the construction of a drainage ditch, on the town in which the drainage ditch and road involved were situated, but this provision was held by the Supreme Court to be in conflict with sections 9 and 10 of Article IX of the State Constitution, Cahill's St. Const. 1870, Art. IX, §§ 9, 10, and therefore invalid. *People ex rel. Burow v. Block,* 276 Ill. 286; *Brougher v. Lost Creek Drain. Dist.,* 277 Ill. 156. However, the decision of the court in the cases above cited was construed in *People ex rel. Speck v. Peeler,* 290 Ill. 451, to have no reference to the question of the maintenance of bridges which have become a part of the public highway, after the highway is restored, and referring to the *Block* and *Brougher* cases, and in construing them, the court said: ''There is no intimation in those decisions that a road district is to be entirely relieved from its statutory duty of repairing and re-building bridges at such crossings when such repair or re-building is required by reason of the bridges becoming out of repair or dilapidated by reason of public travel, or that a drainage district should forever repair and maintain bridges on such crossings.'' In the *Peeler* case the commissioner of highways had filed a petition for mandamus to compel the levee district to build bridges across ditches of the

drainage district at each of five places in the township where the drainage ditches had destroyed parts of the public road and to forever keep them in repair, and concerning this matter the court said:

"Appellants insist that under the facts admitted by the demurrer the drainage district owed to the road district, when the highways were cut and the bridges removed, the duty to simply reconstruct and re-build the roads and the bridges so as to restore them to their former degree of usefulness and efficiency and that it has fully discharged that duty. Appellee contends that the duty of the drainage district is continuous, and that as each bridge or structure becomes dilapidated or destroyed, by use of the traveling public or otherwise, it must forever repair or re-build the same at its cost. . . . When the bridges were removed by the drainage district and afterwards re-built and the highway completely restored at those crossings, the bridges and the part of the highway restored constituted parts of the highway, of which the highway commissioners had full control. . . . The duty of the road district to repair and re-build those bridges after they were restored, as aforesaid, still rests upon the road commissioners for the road district. They possess the only authority conferred by law for levying a tax or incurring a liability for public road and bridge purposes. (*People v. Block, supra.*) No further liability can attach to the drainage district on account of such bridges to repair or re-build the same, when such repairing or re-building is only required by reason of public travel thereon or natural decay."

It is insisted, however, by the appellee, that the decision in the *Peeler* case has application only to instances where bridges are constructed over natural depressions or watercourses; and it is true that the ditches referred to in the *Peeler* case, over which bridges were to be built or re-built, were located over natural depressions or watercourses, and that in this

case the ditch in question is entirely artificial. But we are unable to perceive how the fact that a watercourse which makes necessary the building of a bridge to restore a highway to its former efficiency for public use and travel, and thereby becomes a part of such highway, would be in any different legal category than a bridge built over a drainage ditch partly artificial, or over a drainage ditch which runs along a natural depression or watercourse; in either case the bridge when it restores the highway becomes a part of the public road and passes under the control of the commissioner of highways.

In the *Block* case, the drainage ditch involved had also been built along a natural depression or watercourse, but the court held concerning the applicability of the law there decided that this circumstance made no difference, and disposes of the point raised in this way: "Neither does the fact that in the earlier case the ditch over which the bridge was constructed was a natural water-course and in the later case was artificial constitute any valid distinction, though it appears to have been so regarded. The destruction of a part of the highway, requiring its repair, the cost of which can be met only by taxation of the town, is not different in character whether the place of such destruction is at a natural water-course or not."

For the reasons stated, we are of opinion that the burden of maintaining the bridge trestle work in question does not rest on the drainage commissioners but upon the town where the highway is situated; that the duty of providing for the repair of the injuries and impairment of the same due to wear and tear caused by public travel and use, or to natural decay, rests on the appellee as commissioner of highways; and that therefore the demurrer to the petition for mandamus should have been sustained. The judgment awarding the writ of mandamus against the appellants is therefore reversed.

*Reversed.*