(No. 30961.—

THE CITY OF CHICAGO, Appellant, *vs.* THE SANITARY DISTRICT OF CHICAGO, Appellee.

*Opinion filed November 22, 1949.*

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, ROBERT J. NOLAN, LOUIS H. GEIMAN, and ARTHUR MAGID, of counsel,) all of Chicago, for appellant.

ERNST BUEHLER, of Chicago, (LOUIS I. FISHER, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

The plaintiff, the city of Chicago, brought an action in the circuit court of Cook County against the defendant, the Sanitary District of Chicago, for a declaratory judgment to determine the duties of the respective parties with regard to the maintenance and repair of six bridges. The bridges in question were constructed by the sanitary district at points where its artificial drainage channels intersect with important public thoroughfares in Chicago. The cause was heard upon the pleadings and a stipulation of facts and judgment was entered against the sanitary district as to the three bridges built prior to 1915 and against the city as to the three bridges constructed subsequent to 1915. Liability of the city to maintain and repair the three bridges built after 1915 was grounded upon the 1915 amendment to section 17 of "An Act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois rivers," (Ill. Rev. Stat. 1949, chap. 42, par. 337,) hereafter referred to as the Sanitary District Act of 1889. Contrary

to the contention of the city, the circuit court held that the applicable statute did not contravene sections 9 and 10 of article IX of our constitution. The cause comes directly to this court upon the appeal of the city and the cross appeal of the sanitary district.

The city of Chicago and the Sanitary District of Chicago are both municipal corporations. Of the two, the sanitary district is the larger, as it embraces the entire city and, also, extends to areas lying beyond the corporate limits of the city. In 1892, the sanitary district commenced to dig its main channel on the southwest side of the city and, in so doing, cut across Kedzie, California, Crawford and Cicero avenues, among other then-existing public streets and highways. This channel was completed in 1900. In 1910, the sanitary district cut and completed its north shore channel on the northwest side of the city, intersecting many public streets, including Bryn Mawr and Devon avenues. The drainage channels thus constructed are wholly artificial, neither being dug from or along any pre-existing ditch, stream or natural watercourse.

The names of the six bridges and the year each was built are as follows: South Kedzie Avenue, 1899; West Bryn Mawr Avenue, 1910 (rebuilt in 1930); West Devon Avenue, 1910 (rebuilt in 1930); South California Avenue, 1926; South Cicero Avenue, 1927; South Crawford Avenue, 1930. Hereafter, the bridges will be referred to by their street names only. These bridges were all constructed by the sanitary district. No bridge replaced a pre-existing bridge but all were constructed to restore existing public streets to their previous condition as continuous and uninterrupted thoroughfares. Except for the north side of the Devon bridge, all the bridges and their approaches are entirely within the corporate limits of the city. West Devon Avenue is the dividing line between Chicago and the village of Lincolnwood and, consequently, the north side of the Devon bridge lies within the village limits of Lincolnwood.

The sanitary district maintained all the bridges continuously from the dates of their completion and made repairs and replacements from time to time until July 1, 1942. In May, June and July, 1942, the sanitary district repeatedly notified the city that thereafter it would assume no responsibility for the bridges nor would it expend any further sums for their operation, maintenance, repair or lighting. The city refused to accept the bridges thus tendered by the sanitary district. This state of affairs continued until January, 1944, when the city agreed to bring appropriate legal proceedings to terminate the controversy and the sanitary district agreed to operate the bridges during the pendency of the action,—responsibility for the expense of operation, maintenance and repairs to depend upon the outcome of the litigation. This action followed.

The gist of the city's complaint for a declaratory judgment is that, at common law, the duty to maintain the bridges rested upon the sanitary district and that any statutory provision purporting to cast the burden of operating the bridges on the city is unconstitutional. Answering, the sanitary district averred, in substance, that the city was liable for the maintenance of the bridges, both at common law and by virtue of sections 2 and 3 of the 1901 addition to the Sanitary District Act of 1889, (Ill. Rev. Stat. 1949, chap. 42, pars. 352 and 353,) and of section 17 of the 1889 act, as amended in 1915. (Ill. Rev. Stat. 1949, chap. 42, par. 337.) Section 2 of the 1901 addition to the act of 1889 authorizes any sanitary district, organized under the 1889 act, which uses any navigable stream or river, as part of its main or auxiliary channels, and widens, deepens or otherwise improves a river or stream, to construct bridges to meet the altered or changed condition of the stream or river. Section 3 provides that any bridge built to supply or replace a public street or highway bridge shall, upon completion, be operated and controlled by the city, town or village wherein it is located. The circuit court

made no ruling as to the application or validity of sections 2 and 3, and, in this court, the sanitary district, while refusing to admit that this statute is inapplicable or invalid, does not argue the point.

Under section 17 of the Sanitary District Act of 1889, as amended in 1915, the sanitary district was authorized to construct bridges across its main channel at Crawford, California and Cicero Avenues, in Chicago, and at Harlem Avenue in Cook County. Section 17 also ordains, in pertinent part, that "Said bridges with approaches, roadways and sidewalks thereon shall be thereafter maintained in good order for public travel by any such [sanitary] district as a corporate expense, and no compensation shall be demanded or required to be paid any such district * * * as compensation for such bridges * * *: Provided, however, that if any such bridges * * * shall lie wholly within the territorial limits of any one municipality, then any such bridges * * * shall on completion be turned over to the corporate authorities of any such municipality free of cost, and shall thereupon become the property of such municipality, and be maintained in good order for public travel by such municipality." (Ill. Rev. Stat. 1949, chap. 42, par. 337.) In reply to the answer of the sanitary district setting forth section 17, the city asserted that, insofar as the statute attempts to burden the city with a corporate liability without the consent of its corporate authorities, it contravenes sections 9 and 10 of article IX of our constitution. Section 9 of article IX authorizes the General Assembly to vest corporate authorities of cities, towns and villages with the power to levy special assessments for local improvements and general taxes for all other corporate purposes. The constitutional prohibition invoked by the city is found in section 10 of article IX, providing, "The general assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, * * *."

In adjudging the sanitary district to be liable for the maintenance of the Kedzie (1899), Bryn Mawr (1910) and Devon (1910) bridges, the circuit court held that, at common law, whoever causes an obstruction of a public highway is required not only to restore the highway to its former condition of usefulness to the public but also to maintain any bridge or causeway carrying the highway over or across the obstruction. In connection with the same three bridges, the court further held that section 17 of the Sanitary District Act of 1889, as amended in 1915, operated prospectively, only, and, therefore, has no application to these bridges. With respect to the California (1926), Cicero (1927) and Crawford (1930) bridges, the circuit court held that the 1915 amendment to section 17 of the statute was applicable; that the maintenance of public highway bridges by the city is a governmental function, and that the imposition by the General Assembly of additional governmental duties upon the city was a proper exercise of legislative power and does not violate sections 9 and 10 of article IX of the constitution.

In this court, the city contends that, at common law, the sanitary district is liable for the maintenance of all six bridges and that section 17 of the Sanitary District Act of 1889, as amended in 1915, operates prospectively only, attempts to change the common-law rule, and is unconstitutional to the extent it seeks to place the burden of operating subsequently constructed bridges upon the city without its consent. As cross appellant, the sanitary district asserts that, under the true common-law rule, the city, not the sanitary district, is alone responsible for the upkeep and repair of the bridges. Although the sanitary district now concedes that section 17, as amended, operates prospectively, only, it vigorously maintains its assertion that section 17 is simply a legislative affirmation of the common law and does not contravene sections 9 and 10 of article IX of the constitution. If this contention of the sanitary dis-

trict is correct, consideration of the constitutional issue made and argued will become unnecessary.

Since both parties agree that section 17 has no retroactive effect, it follows that, regardless of the constitutionality of the statute, the common law is controlling with respect to the Kedzie (1899), Byrn Mawr (1910) and Devon (1910) bridges. One of the fundamental rules of the common law is that whoever causes an obstruction to a public highway must restore the highway to its former condition of usefulness. Thus, where a drainage district, in making an excavation in a natural stream, removes the platform of a bridge, it incurs the duty of replacing the platform of the bridge in its former position. (*People ex rel. Smith* v. *Board of Supervisors,* 314 Ill. 256.) If, as the result of widening and deepening a natural watercourse, a new bridge is required to restore the highway, the drainage district is nonetheless liable for the rebuilding of the bridge. (*People ex rel. Speck* v. *Peeler,* 290 Ill. 451.) The same rule applies where a small creek running under a highway is so improved in the process of converting it into a drainage district that a bridge is required in the public highway for the first time. (*People ex rel. Burow* v. *Block,* 276 Ill. 286.) Likewise, there is no variation in the rule where the obstructing drainage ditch is artificial and does not follow any river, stream, or other natural watercourse. Even under these conditions, the drainage district, and not the road district, is under a duty to erect an original bridge in the public highway over the drainage ditch. (*People ex rel. Parmenter* v. *Fenton and Thomson Railroad Co.* 252 Ill. 372.) It is thus apparent that, with respect to the duty of restoring a highway over a drainage ditch, it is immaterial whether the obstruction results from the improvement of a natural watercourse or the cutting of an artificial ditch, or whether the bridge needed to restore the highway replaces an existing bridge or involves the construction of an original bridge.

In the case at bar, however, no question is presented with respect to the duty of the sanitary district to construct the controverted bridges. The issue here under consideration is the closely related question of determining the liability for maintaining the bridges after their erection by the sanitary district in the discharge of its duty to restore the public streets of the city. By its cross appeal, the sanitary district denies that, after having restored the streets with bridges, it is forever bound, at common law, to illuminate, operate, maintain, repair and, from time to time, replace the bridges and their approaches, roadways, sidewalks and other appurtenances. In this connection, the sanitary district relies upon the duty of the city to maintain its public streets and thoroughfares. The duty of a city to maintain its streets is beyond question. Manifestly, this duty extends to bridges constructed by the city for the purpose of improving its streets or creating new streets. No distinction between a public highway bridge and any other part of a highway suggests itself. A bridge is simply a component part of a public thoroughfare. Furthermore, it is established that where an existing bridge is rebuilt or replaced in compliance with the duty to restore the public highway, the duty to maintain the bridge does not shift from the city to the person or corporation who has created an obstruction and restored the highway. *People ex rel. Smith* v. *Board of Commissioners,* 314 Ill. 256; *People ex rel. Speck* v. *Peeler,* 290 Ill. 451.

To avoid the application of the general rule of municipal liability for the maintenance of bridges carrying municipal streets over obstructions in the highway, the city asserts that an exception exists where, as here, the obstruction to the public street is wholly artificial and the public street is restored to its former condition of usefulness by the erection of an original bridge. The city points out that an original bridge over an artificial obstruction transforms a simple street maintenance duty into an expensive bridge

maintenance obligation. It is the city's contention that, in this circumstance, the common law absolves it from liability for the increased burden and casts the duty of maintaining the bridge on the person whose artificial obstruction necessitated the construction. Placing the responsibility for maintenance of the bridges upon the sanitary district would absolve the city of all its former liability for maintaining those sections of its public streets since replaced by the bridges in question. The public roadways spanning the sanitary district channels are an integral part of the public thoroughfares of the city. For this reason, the city has jurisdiction and control over public highway bridges. The right to exercise jurisdiction and control over the bridges is accompanied by the corresponding duty to maintain and repair the bridges. Furthermore, with particular respect to the city's complaint of the increased burden of bridge maintenance, it should be observed that the expense of operation and maintenance of the bridge is necessitated by the city's use of the bridges as heavily traveled public thoroughfares rather than by the action of the sanitary district in maintaining a drainage channel. City traffic makes the bridges wear out. Increases in the volume of traffic on the city streets makes the bridges obsolete and necessitates their replacement.

Our conclusion that the city is responsible for the maintenance, repair and replacement of the bridges is supported by *People ex rel. Kurtz* v. *Meyer*, 251 Ill. App. 475, twice considered by this court. A township brought an action for a writ of *mandamus* to compel a drainage district to maintain and repair an original bridge constructed by the drainage district following its cutting of a wholly artificial ditch across a public road. From a judgment in favor of the township, the drainage district prosecuted a direct appeal to this court. Subsequently, the appeal was transferred to the Appellate Court for the Third District. (*People ex rel. Kurtz* v. *Meyer*, 328 Ill. 122.) The Appellate

Court held that, upon the erection of the bridge over the artificial ditch and the restoration of the highway to its former condition of usefulness to the public, the drainage district had completely discharged its obligations and had no further duties with respect to the bridge. Holding that the township, alone, was responsible for the maintenance and repair of the bridge, the Appellate Court reversed the judgment awarding the writ of *mandamus* and remanded the cause, with directions to the trial court to sustain the drainage district's demurrer to the complaint. The cause again came before this court on petition for writ of *certiorari* and the petition was denied. (*People ex rel. Kurtz* v. *Meyer,* 251 Ill. App. xxxix.) The relevant facts in the *Kurtz case* exactly parallel the factual situation in the present case.

To sustain the judgment of the circuit court with respect to the common law, the city relies upon *County of Henderson* v. *Chicago, Burlington and Quincy Railroad Co.* 320 Ill. 608. There, it was held that a railroad company is bound to maintain and repair a bridge constituting part of the approach of a highway to a railroad grade crossing even though the bridge does not lie within the railroad company's right of way. The action originated in a proceeding brought by the county against the railroad company before the Illinois Commerce Commission. It appeared that the public highway had formerly crossed a stream, lying just outside the right of way, by a ford. Subsequently, the railroad company raised its roadbed and it became necessary to build a bridge across the stream in order to provide a suitable approach to the raised grade crossing. The railroad company built the bridge. Many years later, the bridge became impassable for want of repairs and the county was successful in its action to compel the railroad company to rebuild the bridge. Both section 8 of "An Act in relation to fencing and operating ailroads," approved March 31, 1874, (Ill. Rev. Stat. 1949,

chap. 114, par. 62,) and section 58 of the Public Utilities Act (Ill. Rev. Stat. 1949, chap. 111⅔, par. 62,) impose upon railroad companies the duty of constructing and maintaining safe and proper grade crossings and approaches within their rights of way. In imposing liability upon the railroad company involved, this court simply held that, at common law, the obligation of a railroad company to maintain safe grade crossings and approaches extended to necessary approaches lying outside of its right of way. The decision is distinguishable by reason of the dangerous character of railroad crossings and the continuing duty of the railroad companies to maintain safe and proper grade crossings. The *Henderson County case* is limited to railroad crossings and is not applicable in the present litigation.

The city of Chicago is liable, at common law, for the maintenance and repair of the six bridges in question as part of its system of public streets and thoroughfares. The north half of the Devon bridge lying outside the corporate limits of the city and constituting part of the public streets of the village of Lincolnwood is not at issue and must be excluded from the judgment. Since the city is under obligation, at common law, to maintain all the bridges, exclusive of the north half of the Devon bridge, it becomes unnecessary to consider the constitutional validity of the 1915 amendment to section 17 of the Sanitary District Act of 1889.

The judgment of the circuit court of Cook County is affirmed with respect to the California, Cicero and Crawford bridges and reversed with respect to the Kedzie, Bryn Mawr and Devon bridges, and the cause is remanded to the circuit court, with directions to enter judgment for the sanitary district and against the city as to the Kedzie and Bryn Mawr bridges and the south half of the Devon bridge.

*Judgment affirmed in part, reversed in part,*
*and remanded, with directions.*