THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Plaintiff-Appellant, *v.* THE VILLAGE OF ROMEOVILLE, Defendant-Appellee.

Third District   No. 80-37

Opinion filed August 13, 1980.

James B. Murray and Jack L. Shankman, both of Chicago, for appellant.

Richard T. Buck and David L. Ruttle, both of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On March 4, 1979, the Metropolitan Sanitary District of Greater Chicago filed a complaint for declaratory relief in the Circuit Court of Will County asking that certain 1899 ordinances of the district and of the Village of Romeoville be declared invalid under statutes of the State of Illinois subsequently enacted, that the village be declared to have a statutory obligation to assume ownership and maintenance of the Romeo Road Bridge, and that the district be declared to have no legal duty to maintain or replace the bridge.

While admitting the factual allegations of the complaint, the village's answer affirmatively alleged that the district was required to maintain the bridge. The village based its contention upon an ordinance of the village adopted May 3, 1899, which granted the district the right to construct a swing bridge over the district's main channel within the village upon the condition that the district shall "hereafter" maintain the bridge. The district enacted a companion ordinance on May 31, 1899, incorporating the provisions of the village's ordinance. Thereafter, the district constructed the bridge and, since 1899, has maintained and operated it. After each party filed a motion for judgment on the pleadings, and after a

hearing on the motions, the trial court entered judgment in favor of the defendant village.

The district appeals, asserting first that the ruling of the trial court was incorrect because the statutes, as well as the common law, require the village to maintain this bridge as a part of a public street even though it was built by the district.

Under "An Act extending the power of sanitary districts organized under an act entitled 'An Act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois rivers,' approved May 29, 1889 * * *" (Ill. Rev. Stat. 1979, ch. 42, pars. 351-353), the Chicago Sanitary District is authorized to purchase or to condemn land needed to widen or deepen the channel of any stream or river it uses and is also authorized to construct any bridges which may be required as a result. Section 3 of the Act provides:

"Nothing herein contained shall be construed as depriving any city, village or town, situated wholly or partly within the limits of said sanitary district, of any power now exercised in the operation of said bridges; and any bridges built under the provisions of this act to supply or replace a public street or highway bridge, now or hereafter existing, shall, after the construction of said bridge, be operated and controlled for municipal purposes by said city, village or town within which it is located." Ill. Rev. Stat. 1979, ch. 42, par. 353.

The village argues that this section does not control in this case because it was adopted in 1901, after the Romeo Road Bridge was completed, and is to be applied prospectively only. In *City of Chicago v. Sanitary District* (1949), 404 Ill. 315, 89 N.E.2d 35, a similar section of the Sanitary District Act of 1889, as amended in 1915, was conceded by both parties to operate prospectively and, the court held that the common law was controlling as to bridges built by the sanitary district before 1915. Confronted with a dispute between the city of Chicago and the district as to who should maintain and repair six bridges constructed by the district at points where its drainage channels intersect with important public streets in Chicago, the court held that, under the common law, the city was responsible for maintenance, repair, and replacement of the bridges. The court stated the rationale for the common law rule as follows:

"The public roadways spanning the sanitary district channels are an integral part of the public thoroughfares of the city. For this reason, the city has jurisdiction and control over public highway bridges. The right to exercise jurisdiction and control over the bridges is accompanied by the corresponding duty to maintain and repair the bridges. Furthermore, with particular respect to the city's complaint of the increased burden of bridge maintenance, it should be observed that the expense of operation and maintenance

of the bridge is necessitated by the city's use of the bridges as heavily traveled public thoroughfares rather than by the action of the sanitary district in maintaining a drainage channel. City traffic makes the bridges wear out. Increases in the volume of traffic on the city streets makes the bridges obsolete and necessitates their replacement." 404 Ill. 315, 323.

■■ We think it clear that section 3 codified the common law and, when section 3 is considered along with section 17 of "An Act to create sanitary districts * * *" (Ill. Rev. Stat. 1979, ch. 42, par. 337), it is obvious that the public policy in this State has long been to vest control of bridges which were built by the Chicago Sanitary District, and which are a part of a municipal public street system, in the municipality which controls those streets. The ordinances adopted in 1899 by the village and the district represented an effort to circumvent what was then the common law rule and what is now public policy by means of a contractual agreement between the parties. However, as a general rule, municipal authorities cannot adopt ordinances which infringe upon the spirit of a State law or which are repugnant to the general policy of the State. (*Huszagh v. City of Oakbrook Terrace* (1968), 41 Ill. 2d 387, 243 N.E.2d 831; *City of Marengo v. Rowland* (1914), 263 Ill. 531, 105 N.E. 285.) The test is whether the ordinance permits an act which the statute prohibits, or whether the ordinance prohibits what the statute permits (see, *e.g.*, *City of Chicago v. Union Ice Cream Manufacturing Co.* (1911), 252 Ill. 311, 96 N.E. 872; 56 Am. Jur. 2d *Municipal Corporations* §374 (1971)), and in case of a conflict the ordinance must give way. *Dean Milk Co. v. City of Chicago* (1944), 385 Ill. 565, 53 N.E.2d 612.

■■ Here, the village and district attempted to contract by ordinances for the district to assume the duty of maintenance and repair of a bridge which was a part of the public street system of the village. These ordinances were an attempt to avoid the common law duty of the village to maintain the bridge, and subsequently came into direct conflict with the public policy of the State, as adopted by the legislature in the 1901 and 1915 amendments to the Sanitary District Act. Where a contract ordinance is repugnant to public policy, it will not be enforced (*Huszagh v. City of Oakbrook Terrace* (1968), 41 Ill. 2d 387, 243 N.E.2d 831), and, accordingly, we find that the ordinances here must give way in preference to the statute.

The judgment of the Circuit Court of Will County in favor of defendant is, therefore, reversed and remanded for entry of a judgment order in favor of plaintiff consistent with this opinion.

Reversed and remanded with directions.

STOUDER and BARRY, JJ., concur.